926 F.2d 339
 FIRST SOUTH PRODUCTION CREDIT ASSOCIATION; Federal
Intermediate Credit Bank of Jackson; Farm Credit
Bank of Wichita, Plaintiffs-Appellants,
v.
The FARM CREDIT ADMINISTRATION; Marvin R. Duncan, Acting
Chairman; Farm Credit Bank of Texas, Defendants-Appellees,
Buckeye Production Credit Association; Federal Land Bank
Association of Fostoria; David Boren, United States
Senator; Federal Land Bank Association of North Alabama;
Federal Land Bank Association of South Mississippi; Federal
Land Bank Association of South Louisiana; Federal Land Bank
Association of South Alabama; Federal Land Bank Association
of North Louisiana; Federal Land Bank of North Mississippi;
Farm Credit Bank of Springfield; Springfield Bank for
Cooperatives; Western Farm Credit Bank; Charles W.
Stenholm, Amici Curiae.
 No. 90-2658.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 31, 1990.
Decided Feb. 19, 1991.
 
 Nels J. Ackerson, Sidley & Austin, argued, Washington, D.C., for appellants.
 Stewart A. Block, George W. Jones, Jr., Michael D. Warden, Sidley & Austin, Washington, D.C., C. York Craig, Jr., and L. Keith Parsons, Watkins, Ludlam & Stennis, Jackson, Miss., on brief, for appellant First South Production Credit Ass'n.
 Sam E. Scott and Michael S. McKay, Heidelberg, Woodliff & Franks, Jackson, Miss., on brief, for appellant Federal Intermediate Credit Bank.
 Peter Rolf Maier, Civ.Div. U.S. Dept. of Justice and Christopher Thomas Corson, Vinson & Elkins, argued, Washington, D.C., Stuart M. Gerson, Asst. Atty. Gen., Robert S. Greenspan, Civ.Div., U.S. Dept. of Justice, Washington, D.C., Henry E. Hudson, U.S. Atty., Alexandria, Va., Victor Cohen, Anthony Torres, Farm Credit Admin., McLean, Va., Ky P. Ewing, Jr., Vinson & Elkins, Washington, D.C., Thomas F. Farrell, II, McGuire, Woods, Battle & Booth, Alexandria, Va., and Bill Zimmerman, Farm Credit Bank of Texas, Austin, Tex. (on brief), for appellees.
 John C. Deal, O. Judson Scheaf, III, Emens, Hurd, Kegler & Ritter, P.A., Columbus, Ohio and Bernard K. Bauer, Bernard K. Bauer Co., L.P.A., Findlay, Ohio, for amici curiae Buckeye Production Credit Ass'n and Federal Land Bank Ass'n of Fostoria.
 David L. Boren, U.S. Senator, Washington, D.C., amicus curiae.
 Allan S. Kantrowitz, Vice-President/Gen. Counsel, Farm Credit Bank of Springfield, Springfield Bank for Cooperatives, Agawam, Mass. and Larry M. Hulquist, Sr. Vice-President/Gen. Counsel, Western Farm Credit Bank, Sacramento, Cal., for amici curiae Farm Credit Bank of Springfield, Springfield Bank for Cooperatives and Western Farm Credit Bank.
 Charles W. Stenholm, U.S. Representative, Washington, D.C., amicus curiae.
 John B. Clark, Daniel, Coker, Horton & Bell, P.A., Jackson, Miss., for amici curiae Federal Land Bank Associations of North Alabama, South Alabama, North Louisiana, South Louisiana, North Mississippi, and South Mississippi.
 Before ERVIN, Chief Judge, and WILKINSON, Circuit Judge, and HOUCK, United States District Judge for the District of South Carolina, sitting by designation.
 WILKINSON, Circuit Judge:
 
 
 1
 The First South Production Credit Association ("First South PCA"), the Federal Intermediate Credit Bank of Jackson ("Jackson FICB"), and the Farm Credit Bank of Wichita ("Wichita FCB") contest the determination of the Farm Credit Administration ("FCA") that section 410(a) of the Agricultural Credit Act of 1987 requires the merger of the Jackson FICB and the Farm Credit Bank of Texas ("Texas FCB"). Finding the FCA's interpretation of section 410(a) to be contrary to the plain language of the statute and inconsistent with congressional intent, we hold the FCA's merger order to be unlawful and reverse the judgment of the district court.I.
 
 
 2
 Some brief background on the Farm Credit System is in order. Congress created the system to "improv[e] the income and well-being of American farmers and ranchers by furnishing sound, adequate, and constructive credit" to them. 12 U.S.C.A. Sec. 2001(a) (1989). The First South PCA, the Jackson FICB, the Wichita FCB, and the Texas FCB are all federally chartered institutions of the system.
 
 
 3
 The system, a nationwide network of agricultural lenders, is divided into twelve exclusive geographic territories known as Farm Credit Districts. Appellants Jackson FICB and First South PCA are located in the Fifth Farm Credit District ("Jackson District"), which is comprised of Alabama, Louisiana, and Mississippi. Appellant Wichita FCB is located in the Ninth Farm Credit District--which includes Kansas, Oklahoma, Colorado, and New Mexico--and appellee Texas FCB is located in the Tenth Farm Credit District--which includes only the state of Texas. The system is regulated by the Farm Credit Administration, an independent executive branch agency of the federal government.
 
 
 4
 Prior to 1988, each district was served by three system banks which operated under a single district board of directors: first, a Federal Land Bank ("FLB") which made long-term real estate loans through Federal Land Bank Associations ("FLBAs"), see 12 U.S.C.A. Secs. 2014, 2020 (repealed 1988), and, second, a Federal Intermediate Credit Bank ("FICB") which financed the short- and intermediate-term lending of Production Credit Associations ("PCAs"), see 12 U.S.C.A. Secs. 2074, 2075 (repealed 1988). In the Jackson District, the Jackson FICB financed and continues to finance the lending activities of First South PCA, which owns approximately 92% of the stock of Jackson FICB, and Northwest Louisiana PCA, which owns the remaining 8% of the stock. Finally, a Bank for Cooperatives ("BC") made loans to agricultural, aquatic, and rural utility cooperatives.
 
 
 5
 The borrowers in the Farm Credit System are also its owners. To obtain a loan, borrowers must purchase stock in their PCAs or FLBAs. As stockholders, the borrowers elect the board of directors that governs each association. In turn, the associations capitalize and own stock in the banks in each district and elect the board of directors for the banks.
 
 
 6
 The Agricultural Credit Act of 1987, Pub.L. No. 100-233, 101 Stat. 1568, as amended ("1987 Act"), brought significant change to the Farm Credit System. To strengthen the system, the 1987 Act "both require[d] and encourage[d] institutions of the Farm Credit System to reorganize in order to better serve their farmer and cooperative members and cut costs." 133 Cong.Rec. S18459 (daily ed. Dec. 19, 1987) (remarks of Sen. Leahy, presenting the Conference Report).
 
 
 7
 At issue in this case is section 410(a) of the 1987 Act which mandated the merger of the FLB and the FICB in each district to form a Farm Credit Bank ("FCB") by July 6, 1988, six months after the Act's effective date. 1987 Act, Sec. 410(a), as amended by Agricultural Credit Technical Corrections Act of 1988, tit. IV, Sec. 402, Pub.L. No. 100-399, 102 Stat. 989, 999 (1988) reprinted at 12 U.S.C.A. Sec. 2011 note (1989). Succeeding provisions governed the structure and operation of the new Farm Credit Banks. Section 410(d), for example, provided that, initially, each new Farm Credit Bank would be governed by a board elected by the PCAs, FLBAs and the stockholders at large and composed of members of the old District Board which was dissolved upon the creation of the FCB.
 
 
 8
 In addition to the mandated mergers of FLBs and FICBs under section 410(a), subtitle B of Title IV of the 1987 Act--entitled "Merger of System Institutions"--authorized various forms of voluntary consolidations among the BCs, Sec. 413, the associations, Sec. 411, other system institutions, Sec. 416, and system districts, Sec. 412. Though these consolidations were to be voluntary and could not be accomplished without a stockholder vote, the 1987 Act encouraged them by requiring that consolidation plans be drafted and submitted to the stockholders. For example, the 1987 Act required the newly formed FCBs to form a special committee to develop a proposal to consolidate the FCBs into not less than six banks. 1987 Act, Sec. 412, 12 U.S.C. Sec. 2002 note (1989).
 
 
 9
 The section 410(a) mergers occurred as required in every district except the Jackson District. (Appellant Wichita FCB is the resulting Farm Credit Bank in the Ninth Farm Credit District and appellee Texas FCB is the resulting FCB in the Tenth Farm Credit District.) No merger between the FICB and the FLB was accomplished in the Jackson District because, effective May 20, 1988, the Jackson FLB was placed in receivership by the FCA. The Jackson FLB--the first and only system bank to be placed in receivership--remains in that status.
 
 
 10
 Ever since the Jackson FLB has been in receivership, the various Jackson lending institutions have worked to ensure continued services to the Jackson District and to resolve the anomalous situation that exists there. The long-term lending duties of the Jackson FLB were assumed by the Texas FCB and the Farm Credit Bank of Columbia under temporary service agreements which remained in effect until February 10, 1989 when a more permanent solution was affected. The Jackson FICB--the only federal intermediate credit bank remaining in the system--has continued to finance the short- and intermediate-term lending activities of First South PCA and Northwest Louisiana PCA.
 
 
 11
 During the summer of 1988, the Jackson FICB began to explore merger possibilities with various FCBs. In the fall, the Jackson FICB, the two PCAs and the Texas FCB entered into a "Memorandum of Understanding." The parties negotiated on the proposed merger between the Jackson FICB and the Texas FCB through the winter and, in December 1988, the Farm Credit Administration approved an exchange of confidential information between the Texas FCB and the Jackson FICB. See 12 C.F.R. Secs. 602.205, 602.289 (1990). The merger negotiations broke down, however, when the parties failed to agree on a mutually acceptable merger plan and the Memorandum of Understanding was terminated by letter dated March 9, 1989.
 
 
 12
 Meanwhile, the liquidation of the Jackson FLB proceeded. On October 31, 1988, the receiver of the Jackson FLB offered a package of loans with a face value of $1.4 billion for sale to system institutions. The package represented approximately 80% of Jackson FLB's loan assets. The FCA Board provided that the bidder could condition its bid on the package on the receipt of "Territorial Servicing Rights" for long-term lending in any or all of the three states in the Jackson District. On December 7, 1988, three bids were submitted. One of the bidders, the Texas FCB, conditioned its bid for the Jackson loans on FCA approval of a charter amendment granting territorial servicing rights in all three states in the Jackson District.
 
 
 13
 On December 21, 1988, the Texas FCB's bid was accepted by the FCA Board, which consisted of Acting Chairman Marvin Duncan and member James R. Billington. In addition, the FCA Board approved an amendment to the charter of the Texas FCB to "incorporate the permanent long term loan servicing rights for the states of Alabama, Mississippi, and Louisiana."
 
 
 14
 Shortly after approving the charter amendment, Acting Chairman Duncan--the sole remaining member of the FCA Board after the resignation of Billington on January 6, 1989--informed the Jackson FICB and the Texas FCB in a letter dated April 13, 1989 that the FCA had "concluded that, in accordance with section 410 of the 1987 Act, the FICB of Jackson and the Texas FCB are required to merge not later than 6 months after February 10, 1989," the effective date of the Texas FCB charter amendment. Shortly thereafter, the Texas FCB indicated agreement with the FCA's conclusion. The Jackson FICB, however, had commenced discussions with the Wichita FCB about a possible merger or affiliation. On April 21, 1989, the FCA denied those two banks the right to exchange confidential information, basing its denial on its interpretation of section 410 as announced in the April 13, 1989 letter. In response to the April 13, 1989 letter, the Jackson FICB wrote to the FCA expressing its intention to pursue a timely merger and requesting an extension of the August 10 merger deadline. The FCA denied the request for an extension and ordered the Jackson FICB and the Texas FCB to submit a merger plan by June 29, 1989.
 
 
 15
 On June 23, 1989, First South PCA, the Jackson FICB, and the Wichita FCB filed suit against the FCA and Acting Chairman Duncan seeking review of the FCA's determination that section 410 of the 1987 Act required the Jackson FICB and the Texas FCB to merge and of the FCA's denial of their request to share confidential information. The plaintiffs also challenged the validity of the charter amendment which gave the Texas FCB territorial servicing rights in the Jackson District, arguing that it was ineffective because accomplished without the consent of the Jackson FICB. The Texas FCB intervened as a defendant.
 
 
 16
 The parties filed cross-motions for summary judgment. The district court granted the defendants' motion. First South Production Credit Assoc. v. Farm Credit Administration, 729 F.Supp. 1559 (E.D.Va.1990). The district court stayed its final order, pending plaintiffs' appeal.
 
 II.
 
 17
 The FCA's interpretation of section 410(a) to require the merger of the Jackson FICB and the Texas FCB must be reviewed under the familiar standards set forth in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under Chevron, courts are bound to "give effect to the unambiguously expressed intent of Congress," notwithstanding agency interpretations to the contrary. Chevron, 467 U.S. at 843, 104 S.Ct. at 2782. However, "if the statute is silent or ambiguous with respect to the specific issue," we cannot "impose [our] own construction on the statute", id., but must defer to the agency's interpretation.
 
 A.
 
 18
 Of course, the "starting point" in statutory interpretation "is the language of the statute." Dole v. United Steelworkers of America, 494 U.S. 26, 110 S.Ct. 929, 934, 108 L.Ed.2d 23 (1990) (quoting Schreiber v. Burlington Northern, Inc., 472 U.S. 1, 105 S.Ct. 2458, 86 L.Ed.2d 1 (1985)). Section 410(a) reads:
 
 
 19
 Not later that 6 months after the date of the enactment of this section [January 6, 1988], the Federal land bank and the Federal intermediate credit bank of each Farm Credit System district shall merge into a Farm Credit Bank in such district pursuant to a plan of merger agreed on by the Boards of Directors of such banks and approved by the Farm Credit Administration, or if such banks fail to agree, a plan of merger prescribed by the Farm Credit Administration....
 
 
 20
 1987 Act, Sec. 410(a), Pub.L. 100-233, as amended by Agricultural Credit Technical Corrections Act of 1988, tit. IV, Sec. 402, Pub.L. No. 100-399, 102 Stat. 999 (1988), reprinted at 12 U.S.C.A. Sec. 2011 note (1989).
 
 
 21
 Here, appellees urge us to defer to the FCA's interpretation of section 410(a). This we cannot do. The statute is not silent or ambiguous merely because it lacks precise congressional guidance on the operation of section 410(a) mergers when the FCA has placed a federal land bank in receivership. The question is whether section 410 authorizes the FCA to order the merger between the Jackson FICB and the Texas FCB; the answer clearly is that it does not. Cf. Board of Governors of Federal Reserve System v. Dimension Financial Corp., 474 U.S. 361, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986) (action of agency inconsistent with the language of the statute).
 
 
 22
 Far from being ambiguous, the language of the statute could not be more plain or more specific. Section 410(a) mandates the merger of two specified entities--"the Federal land bank and the Federal intermediate credit bank of each Farm Credit System district"--into a new specified institution, "a Farm Credit Bank in such district." Only if the Texas FCB were a "Federal land bank" in the relevant district would it fall within the statutory definition of a mandatory merger partner for the Jackson FICB.
 
 
 23
 The Texas Farm Credit Bank is not a "Federal land bank." In distinguishing between a "Federal land bank" and a "Farm Credit Bank," Congress chose to use terms defined by the 1987 and previous acts. "Federal land bank" refers to those banks "established pursuant to section 4 of the Federal Farm Loan Act." 12 U.S.C. Sec. 2011 (1976) (repealed by 1987 Act, Sec. 401). "Farm Credit Bank" is defined by the 1987 Act as the bank "established pursuant to the merger of each District Federal Intermediate Credit Bank and Federal Land Bank." 12 U.S.C.A. Sec. 2011 (1989). In addition to being formally defined terms, "Federal intermediate credit bank" and "Federal land bank" are terms that were commonly used to describe two of the three banks that traditionally served each Farm Credit System District. Because the Texas FCB, a new entity, is indisputably a Farm Credit Bank, it cannot also be a Federal land bank.
 
 
 24
 The FCA argues that a functional view should be taken of the statute. It maintains that section 410(a) requires a merger of long-term and short-term lending institutions in each district and that the Texas FCB is the "Federal land bank" within the terms of 410(a) because it has acquired the long-term lending authority for the Jackson District.
 
 
 25
 We cannot place such a gloss on the statute when the language is so clear. The Texas FCB did not become a Federal land bank for purposes of section 410(a) by acquiring long-term lending authority in the Jackson district. The Act does not permit it to assume a new "functional" identity. The specific designation of the merging entities in section 410(a) marks them as the sole mandatory merger partners.[1] The specificity of the designation in section 410(a) stands in contrast to the general nature of the designation which governs the voluntary intradistrict mergers of "banks," 1987 Act, Sec. 416, as amended, 12 U.S.C.A. Sec. 2279a (1989), and the voluntary interdistrict mergers of "banks ... operating under the same subchapter." 1987 Act, Sec. 416, as amended, 12 U.S.C.A. Sec. 2279f (1989). The fact that Congress referred by name to the banks in question suggests that it meant for section 410(a) to be limited to its terms.
 
 
 26
 The limited nature of section 410(a) and the impossibility of squeezing the Texas FCB into the definition of a "Federal land bank" is evident in other ways. First, the fact that Congress prescribed a limited timetable for the mandatory 410(a) mergers suggests that it contemplated that the banks compelled to merge under that section would be those Federal intermediate credit banks and Federal land banks that existed in each district at that time. Second, the statute refers to the Federal land bank in the district, implying that only one such entity exists. As long as the Jackson FLB continues to exist--albeit in receivership--only it can be the Federal land bank in the Jackson district. Finally, section 410(a) clearly states that the mergers it mandates are between banks in the same district. At the very least, a merger between the Jackson FICB--a Jackson District bank--and the Texas FCB--a Tenth District bank--would have interdistrict implications.[2]B.
 
 
 27
 Though congressional intent appears quite plain from the language of section 410(a) alone, we look to "the provisions of the whole law, and to its object and policy" in order to test our reading. Dole, 110 S.Ct. at 934 (quoting Massachusetts v. Morash, 490 U.S. 107, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1987)). Appellees argue that reading section 410(a) literally will stymie congressional intent. However, in "the face of such plain and precise statutory language," appellees face "a daunting standard;" they "cannot prevail without clear evidence that reading the language literally would thwart the obvious purposes of the Act." Mansell v. Mansell, 490 U.S. 581, 109 S.Ct. 2023, 2030, 104 L.Ed.2d 675 (1989).
 
 
 28
 In this case, no such evidence is forthcoming. No intent to broaden section 410(a) beyond its narrowly tailored language is evident in the structure of the statute or in its legislative history. Indeed, the structure of the 1987 Act supports the conclusion that the merger ordered by the FCA was unlawful. First, a reading of section 410(d) reveals the awkwardness of the FCA's reading of section 410(a). Section 410(d) provides that "the initial board of each Farm Credit Bank shall be composed of the members of the district board (which is dissolved upon the creation of such bank)." 1987 Act, Sec. 410(d), as amended, 12 U.S.C.A. Sec. 2011 note (1989). If the forced merger of the Jackson FICB and the Texas FCB were allowed to proceed, there would be two boards involved--the Jackson district board and the Texas FCB board in the Tenth district--instead of the one clearly contemplated by section 410(d).
 
 
 29
 Second, the structure of the 1987 Act as a whole suggests that Congress intended to limit mandatory mergers of solvent banks to those specifically provided for in section 410(a). While section 410(a) is the only provision under subtitle B of title IV of the 1987 Act--entitled "Merger of System Institutions"--that authorizes mandatory mergers, several provisions provide opportunities for voluntary intra- and inter-district mergers of institutions and consolidations of districts. See 1987 Act, Secs. 412, 413, 416 (codified as amended in scattered sections of 12 U.S.C.A.).
 
 
 30
 In addition, the legislative history reveals that Congress chose to implement only modified restructuring of the Farm Credit System, specifically rejecting more far-reaching options. The original House Bill contained an extensive restructuring plan proposed by Representative Stenholm which would have 1) dissolved the FLBs and the FICBs in each district and combined the long-term and short-term lending operations at the bank level in each territory, and 2) mandatorily reduced the number of districts to not more than six, each served by a new System Service Bank. H.R.Rep. No. 295(I), 100th Cong., 1st Sess., reprinted in 1987 U.S.Code Cong. & Admin.News 2723, 2919 ("House Report"); 133 Cong.Rec. H8190 (daily ed. Oct. 6, 1987) (remarks of Rep. Jones). The Senate Bill contained voluntary merger provisions which the Committee believed would provide "the System with the flexibility necessary to adapt to changing conditions while preserving the principle of borrower control of the System." S.Rep. No. 230, 100th Cong., 1st Sess. 30 (1987) ("Senate Report"). In conference, neither bill was adopted. Instead, the Conference Committee adopted a new provision which required only limited mandatory reorganization but provided additional opportunities for voluntary mergers. H.R. Conf. Rep. No. 490, 100th Cong., 1st Sess. 161, 249, 253-256, reprinted in 1987 U.S.Code Cong. & Admin.News 2956, 3044, 3048-3051 ("Conference Report"). Specifically, the new provision required that the FLBs and FICBs in each district merge, a requirement which was modeled on the first part of the Stenholm plan. Id. at 249, 1987 U.S.Code Cong. & Admin.News 3044. The second part of the Stenholm plan--the widespread consolidation of districts and banks--was rejected. The care with which this compromise was forged cautions against judicial approval of a more extensive course of mandatory merger than Congress has adopted.III.
 
 
 31
 Having surveyed the language, structure, and legislative history of the Agricultural Credit Act, we turn now to appellees' broader arguments. The FCA contends that Congress' principal purpose in passing the 1987 Act was to achieve efficiencies by combining the short-term and long-term lending authorities in each district and that this court should effectuate that purpose by upholding the FCA's merger order.
 
 
 32
 Certainly, Congress passed the merger provisions that it did in a hope of achieving needed efficiencies. See, e.g., 133 Cong.Rec. S18460 (daily ed. Dec. 19, 1987) (remarks of Sen. Lugar); House Report at 65. However, it is clear that efficiency was not Congress' sole concern. Congress may have chosen a statute which required only limited mandatory restructuring in order to preserve stockholder control of system banks. The remarks of members during the debates on the Conference Report reflect a concern that stockholder and bank control not be sacrificed in the name of efficiency and a desire that mandatory restructuring be limited. 133 Cong.Rec. H11869-84 (daily ed. Dec. 18, 1987) (remarks of Reps. Glickman, Wylie, Marlenee); 133 Cong.Rec. S18458-71 (daily ed. Dec. 19, 1987) (remarks of Sens. Karnes, Boschwitz, Heflin). The Conference Report, as discussed above, reflects a compromise between efficiency concerns and local control concerns. Indeed, even the mandatory merger provision of Sec. 410(a) achieves efficiencies without sacrificing local governance. The Sec. 410(a) mergers did not work broad changes with respect to shareholder control because, in each district prior to a Sec. 410(a) merger, the FLB and the FICB already shared a board of directors and, in every district except for the Texas District, they even operated under common management.
 
 
 33
 Appellees' arguments about the broad purposes of the Act are thus "misplaced because, at this general level, there are statements that both contradict and support" their view. Mansell, 109 S.Ct. at 2030. While appellees argue that Congress' intent to create efficiencies will be furthered by the forced merger between the Jackson FICB and the Texas FCB, appellants contend that Congress' intent to maintain shareholder control will be frustrated by the forced merger. "Given Congress' mixed purposes, the legislative history does not clearly support [appellees'] view that giving effect to the plain and precise language of the statute would thwart the obvious purposes of the Act." Mansell, 109 S.Ct. at 2031.
 
 
 34
 In any event, we are not inclined to ignore the plain language of the statute in order to effectuate what appellees claim to be the overarching purpose of Congress. Judges are not free to take the general purpose of a statute and choose the means to implement it, because it is in the delineation of means as well as in the prescription of purposes that Congress makes its intentions clear. "Invocation of the 'plain purpose' of legislation at the expense of the terms of the statute itself takes no account of the processes of compromise and, in the end, prevents the effectuation of congressional intent." Dimension Financial Corp., 474 U.S. at 374, 106 S.Ct. at 689. Moreover, when a statute is the result of a "carefully crafted" compromise--as this one was--"[s]trict adherence to the language and structure of the Act is particularly appropriate." Community for Creative Non-Violence v. Reid, 490 U.S. 730, 109 S.Ct. 2166, 2177 n. 14, 104 L.Ed.2d 811 (1989).
 
 
 35
 In a related argument, appellees maintain that Congress did not foresee the possibility that a Federal land bank could be in receivership at the time it was supposed to merge with a FICB under section 410(a) and, therefore, it was necessary for the FCA to apply the section 410 mandatory merger provision as it did in order to accommodate changed circumstances. Appellees further argue that the continued existence of the Jackson FICB and the continued separation of long-term and short-term lending in the Jackson District is contrary to Congress' intentions and that this is one of the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)).
 
 
 36
 Courts are not the best places to correct congressional oversights--correction must normally await a return to the legislative process. We question, moreover, whether the current situation was either unforeseen or unforeseeable. The evidence shows that the precarious financial condition of many of the system banks was not only foreseeable but a prime motivation for the 1987 Act. See House Report at 53-59; Senate Report at 10-11, 15-22. During the debates on the conference reports, several legislators referred specifically to the Jackson FLB's financial difficulties. 133 Cong.Rec. H11878 (daily ed. Dec. 18, 1987) (remarks of Rep. Espy); 133 Cong.Rec. S18462 (daily ed. Dec. 19, 1987) (remarks of Sen. Cochran). Congress could have made an exception to the mandatory merger provision in cases where FLBs were in financial straits, but it did not. And the question for us, of course, is not what Congress could or might have done, but what it did.
 
 
 37
 Much the same reasoning compels us to reject the FCA's contention that the Texas FCB/Jackson FICB merger must be upheld because there are allegedly no other ways by which to resolve the anomalous situation that exists in the Jackson District. While we are well aware that there are practical consequences to setting aside the merger order, we cannot legitimize statutory violations by pointing to the practical consequences of undoing them. "[W]e decline to misread the statute in order to reach a sympathetic result when such a reading requires us to do violence to the plain language of the statute and to ignore much of the legislative history." Mansell, 109 S.Ct. at 2031.
 
 
 38
 We cannot, of course, map the future and solve the problems in the Jackson District; that is beyond judicial competence. If there truly is a three-state gap in the Farm Credit System as a result of the failure of the Jackson FLB and the Jackson FICB to merge due to the Jackson FLB's receivership status, then Congress may amend the statute to close it. Congress can monitor conditions in the Farm Credit System far better than this court. "Congress chose the language that requires us to decide as we do, and Congress is free to change it." Mansell, 109 S.Ct. at 2031.
 
 IV.
 
 39
 Finally, appellants ask this court to hold that the FCA acted arbitrarily and capriciously in refusing to allow an exchange of confidential information between the Jackson FICB and the Wichita FCB. While we need not address this question, we do note that to the extent that the prohibition of the exchange of information was based upon the belief that the FCA's merger order was proper, that basis is no longer valid.
 
 V.
 
 40
 For the foregoing reasons, we hold that the Agricultural Credit Act of 1987 does not permit the Farm Credit Administration to require the merger of the Farm Credit Bank of Texas with the Federal Intermediate Credit Bank of Jackson. In so holding, we reverse the judgment of the district court.
 
 
 41
 REVERSED.
 
 
 
 [1]
 Section 431(e)(1) of the 1987 Act, 12 U.S.C.A. Sec. 2252(a)(2) (1989), provides: "The Farm Credit Administration Board, after consultation with the respective boards of directors of the affected banks, may require two or more banks operating under the same or different subchapters of this chapter to merge if the Board determines that one of such banks has failed to meet its outstanding obligations." This provision is not part of subtitle B of title IV, "Merger of System Institutions," and no one argues that it is relevant to the merger here
 
 
 [2]
 We see no merit in appellee's argument that any modification of lending boundaries reorganized the Texas FCB as a Jackson District Bank. Apart from the bootstrapping nature of the argument, it ignores the fact that the territory extension did not officially modify the boundaries of the Fifth (Jackson) District, dissolve the Fifth District Board, or place the Texas FCB under the direction of the Fifth District Board
 Because we hold the merger unlawful in any event, we need not address appellants' argument that the amendment of Texas FCB's charter was accomplished in violation of section 5.17(a)(1) of the Farm Credit Act of 1971, 12 U.S.C. Sec. 2252(a)(1) (1989), because it was not done "with the concurrence of the district banks involved."