Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 8, 2002   Decided July 29, 2003

No. 01-5366

LOUISIANA FEDERAL LAND BANK ASSOCIATION, FLCA, ET AL.,
APPELLANTS

v.

FARM CREDIT ADMINISTRATION, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 00cv01582)

———

*Daniel Joseph* argued the cause for appellants. With him on the briefs was *Beth Hirschfelder Wilensky*. *C. Fairley Spillman* entered an appearance.

*Edward Himmelfarb*, Attorney, U.S. Department of Justice, argued the cause for federal appellees. With him on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *Robert S. Greenspan*, Attorney, U.S. Department of Justice.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Kathleen C. Kauffman* argued the cause for appellee First South Farm Credit, ACA. With her on the brief were *Nels J. Ackerson* and *L. Keith Parsons*.

Before: GINSBURG, *Chief Judge*, and EDWARDS and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: The Farm Credit Administration promulgated a rule eliminating geographical restrictions upon certain activities of lenders within the Farm Credit System, and thereby put them into competition with each other. The plaintiffs-appellants – lenders within the System – challenged the rule in district court, claiming it conflicted with the Farm Credit Act and with a 1992 Amendment thereto, and that the FCA promulgated the rule in violation of the procedural requirements of the Administrative Procedure Act. The district court, holding the FCA had complied with the proper procedures and the plaintiffs' statutory arguments were either without merit or had been forfeited, entered summary judgment for the FCA.

We hold the Agency was required by the APA to address the plaintiffs' comment before promulgating the rule. For that reason we reverse the judgment of the district court so this matter may be remanded to the FCA for further proceedings.

## I. Background

The Congress established the Farm Credit System in order to "improv[e] the income and well-being of American farmers and ranchers by furnishing sound, adequate, and constructive credit . . . to them." 12 U.S.C. § 2001(a). The legislature charged the FCA with oversight and regulation of the System. *Id.* §§ 2243, 2252. The System, which has been reorganized many times since its establishment in 1916, *see* Federal Farm Loan Act, ch. 245, 39 Stat. 360 (1916) (revised as Farm Credit Act of 1971, Pub. L. No. 92–181, 85 Stat. 583 (1971) (codified as amended at 12 U.S.C. §§ 2001 et seq.)), currently comprises six Farm Credit Banks (FCBs), an Agricultural

Credit Bank (not relevant to this appeal), and over 100 local "associations," such as the Louisiana Federal Land Bank Association. The FCBs finance the local associations, which in turn provide eligible borrowers with credit for agricultural purposes and rural housing. 12 U.S.C. §§ 2013, 2015, 2017, 2075, 2093, 2279b. Plaintiff Farm Credit Bank of Texas (FCBT) is an FCB; the other plaintiffs are local associations.

The Act authorizes two types of credit facilities relevant to this case: direct loans and loan participations. In a loan participation, an institution such as an FCB buys an interest in a direct loan. *See La. Fed. Land Bank Ass'n, FLCA v. Farm Credit Admin.*, 180 F. Supp. 2d 47, 53 (D.D.C. 2001). An FCB may participate in loans originated either by System or by non-System banks. 12 U.S.C. § 2013(12). With regard to a non-System bank, however, the FCB may participate only in "loans . . . the [FCB] is authorized to make under this subchapter [12 U.S.C. §§ 2011–2023]." *Id.* § 2013(12)(C).

The Act itself contains no geographic restriction upon lending (except for a minor limitation imposed by the 1992 Amendment, discussed below). Nevertheless, the FCA historically has imposed such restrictions by chartering only one lender of each type to serve any given geographic territory and by regulation prohibiting an institution from making a direct loan to a borrower located in another institution's territory without the latter's consent. *See* 12 C.F.R. § 614.4070. Prior to the rulemaking here under review, these restrictions also applied to loan participations; 12 C.F.R. § 614.4000(d)(2) authorized an FCB to "participate in loans financing operations outside its chartered territory only if the [consent] requirements of § 614.4070 are met." 55 Fed. Reg. 24,861, 24,880 (June 19, 1990).

In November 1998 the FCA proposed a rule to modify 12 C.F.R. § 614.4070 by removing the geographic restrictions. 180 F. Supp. 2d at 54; *see* 63 Fed. Reg. 60,219, 60,219/2–3, 60,222/2 (Nov. 9, 1998). The Proposed Rule would have both deleted what was then § 614.4000(d)(2), which had authorized FCBs to participate in loans subject to the geographical restrictions of § 614.4070, *id.* at 60,222/1, and revised

§ 614.4070 to authorize an FCB to "make loans, participate in loans, and provide related services to any eligible borrower." *Id.* at 60,222/2. The preamble to the Proposed Rule emphasized the FCA's desire to foster intra-System competition and "customer choice" by removing territorial restrictions both upon direct lending and upon participations in loans originated by others. *Id.* at 60,220/3.

The FCA received more than 270 comments on the proposal, including one submitted by the plaintiffs, which argued that the FCA lacked statutory authority to promulgate the Proposed Rule, geographic limitations were integral to the statutory scheme, and permitting out-of-territory lending would hurt the System and its customers, especially small farmers. The FCBT also argued that the 1992 Amendment, which the Congress had enacted in the wake of the FCBT's acquisition of the assets of a failed Federal Land Bank, barred the FCA from authorizing other System institutions to engage in long-term lending within the failed bank's territory.

On April 25, 2000 the FCA published the Final Rule, which left § 614.4070 unchanged but removed the references to § 614.4070 from other regulations, including § 614.4000(d). 65 Fed. Reg. 24,101, 24,102/2. As the FCA explained, the Final Rule thus removed geographic restrictions from loan participations but not from direct loans, allowing an FCB to participate in a loan outside its territory without the consent of any other System institution. The FCA justified the rule primarily in terms of market efficiency and risk pooling. *Id.* at 24,101–24,102. The plaintiffs promptly asked the FCA to withdraw the Final Rule and to re-propose it for an additional comment period, but the Agency refused.

The FCBT and the other plaintiffs then sued the FCA in district court, seeking a declaration that the Final Rule was invalid. On cross-motions for summary judgment, the district court held, among other things, that (1) the FCA adequately responded to the comments presented to it, 180 F. Supp. 2d at 62; (2) the Proposed Rule provided adequate notice of the substance of the Final Rule, *id.* at 62–63; (3) the Final Rule was not inconsistent with § 2013(12)(C) of the Act, *id.* at 57–

59; and (4) the FCBT had forfeited its argument that the Final Rule was inconsistent with the 1992 Amendment because it did not raise that argument before the FCA. *Id.* at 59–60.

## II. Analysis

The plaintiffs make two arguments on appeal. First, they claim the FCA did not comply with the notice and comment requirement of the APA when it promulgated the Final Rule. Second, they argue that the Final Rule violates the Farm Credit Act. The FCBT also presses its argument that the rule is barred by the 1992 Amendment.

### A. Procedural Claims

The plaintiffs argue that the FCA's promulgation of the Final Rule was procedurally defective in two respects. First, the comment the plaintiffs submitted to the FCA applied not only to direct lending but also to loan participations and therefore required a response in the final rulemaking, which changes the regulation of participations. Second, the Proposed Rule did not provide adequate notice of the substance of the Final Rule.

1. Failure to Address Comment

As noted above, the Proposed Rule prompted over 270 comments including the one submitted by the plaintiffs. The preamble to the Final Rule said almost nothing about the comments, noting merely:

> No commenter cited any statutory provision that restricts the authority of System banks and associations to participate in loans outside of their chartered territory. Only one comment letter mentioned the statutory authorities of System institutions to participate in loans.

65 Fed. Reg. at 24,101/2. The plaintiffs claim this statement did not adequately address their comment protesting the introduction of competition by the lifting of the geographic restrictions. In response the FCA points out that in the preamble to the Proposed Rule it had discussed out-of-

territory lending and out-of-territory participations separately, whereas the plaintiffs' comment did not make such a distinction and was not specifically directed to the part of the Proposed Rule dealing with participations. Therefore, it argues, none of the comments it received was relevant to the Final Rule authorizing only out-of-territory participations and none required a response.

The FCA should have responded to the plaintiffs' comment. Although the FCA is not required "to discuss every item of fact or opinion included in the submissions" it receives in response to a Notice of Proposed Rulemaking, *Pub. Citizen, Inc. v. Fed. Aviation Admin.*, 988 F.2d 186, 197 (D.C. Cir. 1993), it must respond to those "comments which, if true, . . . would require a change in [the] proposed rule." *Am. Mining Cong. v. United States EPA*, 907 F.2d 1179, 1188 (D.C. Cir. 1990). In this case the plaintiffs' comment was applicable equally to a rule limited to participations and to one that also removed the geographic restriction upon direct lending: it argued against the introduction into the System of competition generally, without regard to form. In the first sentence of the argument portion of their comment letter, the plaintiffs asserted broadly that the FCA "does not have the statutory authority to implement intra-system competition." Letter from Bill Zimmerman, General Counsel, FCBT, to Patricia W. DiMuzio, Director, Regulation and Policy Division, FCA 10 (May 3, 1999) (*Plaintiffs' Comment*). The plaintiffs complained that the Proposed Rule would, by authorizing "out-of-territory lending," effectively "abolish Congress's carefully wrought statutory scheme of geographic boundaries and limitations." *Id.* at 15. That would be undesirable, the plaintiffs argued, because "cooperation and interdependence are essential characteristics of the Farm Credit System." *Id.* at 18–19.

We find unpersuasive the FCA's response that the plaintiffs' comment lacked adequate specificity to out-of-territory participations. The plaintiffs argued that geographical boundaries were required by the Act and that the Proposed Rule would break down those boundaries; the Final Rule did just that. True, it did so only as to participations, but that was not a trivial part of what the plaintiffs had argued was

unlawful. Specifically, the plaintiffs had argued that allowing an FCB to compete outside its geographic territory without the consent of the System lender whose territory is implicated would interfere with the cooperative nature of the system; the Final Rule authorized FCBs to compete outside their geographic territories as to participations without first obtaining that consent. The FCA asserts that the term "out-of-territory lending" as used in the *Plaintiffs' Comment* denotes only direct loans and not loan participations, but it offers no reason, and we see none, to believe that. We interpret the plaintiffs' comment, in keeping with the rationale that underlies it, to relate to all forms of out-of-territory lending, including but not limited to participation in loans originated by others. As such, their comment deserves an answer.*

2. Notice

The plaintiffs also argue that the Proposed Rule did not give the public sufficient notice of what the Final Rule ultimately contained; they claim the FCA therefore was required to solicit a second round of comments before promulgating a rule removing the geographical restrictions upon the participations only.

As the FCA points out, an agency may promulgate a final rule that differs from the rule it has proposed without first soliciting further comments if the final rule is a "logical outgrowth" of the proposal. *Nat'l Elec. Mfrs. Ass'n v. EPA*, 99 F.3d 1170, 1172 (D.C. Cir. 1996). In this case, the Final Rule clearly is a logical outgrowth of the Proposed Rule. The Proposed Rule would have removed the geographical restrictions from loan participations, among other things. Specifi-

---

* The district court suggested that FCBT's comment was "purely speculative," 180 F. Supp. 2d at 62, and therefore did not require a response, citing *Home Box Office, Inc. v. FCC*, 567 F.2d 9, 35 n.58 (1977) ("comments which themselves are purely speculative and do not disclose the factual or policy basis on which they rest require no response. There must be some basis for thinking a position taken in opposition to the agency is true"). Because none of the defendants urged this point as a basis for affirmance, we do not consider it.

cally, 12 C.F.R. § 614.4070 would have been revised to permit System institutions to "make loans, participate in loans, and provide related services to any eligible borrower," 63 Fed. Reg. at 60,222/2, and the preamble to the Proposed Rule separately discussed deleting the geographical restrictions upon direct loans and upon loan participations. *Id.* at 60,-220/2–3. Therefore the Final Rule, which merely eliminated the cross-reference in § 614.4000(d) to the geographical restrictions upon loan participations in § 614.4070, was a logical outgrowth – indeed a natural subset – of the proposal.

The plaintiffs argue that the preamble to the Proposed Rule, by describing the deletion of the cross-reference in § 614.4000(d) as a "conforming amendment[ ]," *id.* at 60,219/1, 60,220/3, implied the FCA would not promulgate that "amendment" by itself; their idea is that it is not logical to adopt a "conforming amendment" when there is nothing new to which it makes the amended text conform. This is essentially a technical argument, and not a convincing one. Although the FCA's chosen method for removing the geographical restriction upon loan participations – not by rewriting § 614.4070 but by deleting references to § 614.4070 in other regulations – was not heralded in the Proposed Rule, the result surely was. The preamble to the Proposed Rule separately discussed the possibility of lifting the restrictions upon loan participations and lifting the restrictions upon direct lending. *Id.* at 60,220. Moreover, it provided a separate rationale for each aspect of the proposal. *Id.*

As the district court put the matter, "[n]owhere does the Proposed Rule indicate that removal of geographic restriction is an all-or-nothing proposal." 180 F. Supp. 2d at 63. Under these circumstances, we think the plaintiffs were clearly on notice that if they had anything to say specifically about the effect of removing geographic restrictions upon loan participations – either alone or in combination with the removal of restrictions upon other activities – then they should have said it during the period for comments on the Proposed Rule.

## B. Substantive Claims

All the plaintiffs argue that the Final Rule violates the Farm Credit Act by purporting to authorize FCBs to partici-

pate in loans prohibited to them by the Act. In addition, the FCBT argues that permitting other System institutions to operate in the territory of the former Federal Land Bank of Jackson invades the exclusive lending rights given to the FCBT by the 1992 Amendment.

1. The Farm Credit Act

Section 2013(12)(C) of Title 12 authorizes an FCB to participate with non-System lenders "in loans that the bank is authorized to make under this subchapter." The plaintiffs argue that the Final Rule does not authorize an FCB to make a direct loan to an out-of-territory borrower without the consent of the System institutions located in the borrower's territory. Therefore, it reasons, an FCB is not "authorized to make" such a direct loan "under this subchapter," and the rule, by authorizing it to participate in such a loan, runs afoul of the statute. The FCA responds that, because Subchapter I of the Act, 12 U.S.C. §§ 2011–2023, authorizes an FCB to make certain "long-term real estate mortgage loans," *id.* § 2015(a)(1), "section 2013(12)(C) simply restricts FCBs to participating in" that type of out-of-territory loan.

In order to determine whether the FCA's interpretation of the Act it administers is permissible, we look to the standard set out in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). At *Chevron* step one, we ask whether the Congress "has directly spoken to the precise question at issue," *id.* at 842; if so, then we must "give effect to [its] unambiguously expressed intent." *Id.* at 843. If the intent of the Congress is ambiguous with respect to the question before us, then at *Chevron* step two we defer to the FCA's interpretation so long as it is "based on a permissible construction of the statute." *Id.*

The plaintiffs argue that the "plain statutory text" prohibits an FCB from "enter[ing] into a participation loan if the [FCB] could not make the loan as a direct loan." Not quite. The "plain statutory text" states that an FCB may not participate in a loan if that loan is one that "the bank is [not] authorized to make under" Subchapter I. This of course surfaces the question obscured by the plaintiffs' formulation:

Authorized by what? The statute itself authorizes FCBs to make certain long-term real-estate mortgage loans, but the FCA, exercising its delegated authority to promulgate regulations implementing the Act, restricted FCBs to a subset of those loans. Thus the disputed statutory phrase, "loans that the bank is authorized to make under this subchapter," is susceptible to at least two interpretations. It might mean either "authorized [by the statute, as limited by the applicable regulations,] to make under this subchapter," or it might mean "authorized to make under this subchapter [without regard to any limiting regulations]." We conclude that in these circumstances the intent of the Congress is unclear; it did not speak directly to the precise issue before us.

Nothing in the legislative history of § 2013(12)(C) changes our view of the statute. The plaintiffs point to the following statement in the Senate Report: "land banks could partici[p]ate with nonsystem lenders only in real estate mortgage loans that the land banks are authorized to make under the Act." S. Rep. No. 96–837, at 14 (1980). The plaintiffs argue that if the Congress had intended the meaning now urged by the FCA, then it would have ended this statement after the word "loans" because the remainder would be superfluous. But that is not correct because § 2015(a)(1) does not authorize FCBs to make any and all real estate mortgage loans. Instead it authorizes FCBs to make such loans "in rural areas . . . or to producers or harvesters of aquatic products." Because the Act allows FCBs to participate only in a subset of real estate mortgage loans, the remainder of the sentence is not superfluous even upon the FCA's interpretation; it invokes the limitation just quoted.

Having determined in *Chevron* step one that the Congress did not directly address the question at issue, we move briefly to *Chevron* step two. We need only say that, for the reasons stated above, we think the FCA's interpretation is reasonable.

The plaintiffs next claim the FCA's interpretation of § 2013(12)(C) is not entitled to *Chevron* deference because the Agency first presented that interpretation in this litigation. Although we would not defer to the mere litigating

position of agency counsel, *see, e.g., Inv. Co. Inst. v. Camp*, 401 U.S. 617, 627–28 (1971), that is not what the FCA has urged here. The Agency itself has long interpreted § 2013(12)(C) to authorize an FCB to participate with a non-System lender in a loan "of the type it is authorized to make under title I of the Act." *See* 12 C.F.R. § 614.4000(d)(1).

## 2. 1992 Amendment

The FCBT alone argues that the Final Rule conflicts with a 1992 Amendment to the Act; to understand this argument requires a bit more history.

The relevant amendment, §§ 401(b)-(c) of the Farm Credit Banks and Associations Safety and Soundness Act of 1992, Pub. L. No. 102–552, 106 Stat. 4102, 4128, grew out of events set in motion by the Agricultural Credit Act of 1987, Pub. L. No. 100–233, 101 Stat. 1568 (1988), which effected a change in the organization of the System, requiring the merger of then-existing Federal Land Banks and Federal Intermediate Credit Banks to form the FCBs of the current System. The Federal Land Bank of Jackson (Mississippi) – which was to be merged with the Federal Intermediate Credit Bank of Jackson – was placed in receivership in 1988, thus rendering the merger impractical. Instead, the FCBT purchased from the receiver the assets of the Federal Land Bank of Jackson, and the FCA (1) approved an amendment to the charter of the FCBT permitting it to operate in the territory of the Federal Land Bank of Jackson, and (2) ordered a merger of the FCBT with the Federal Intermediate Credit Bank of Jackson. A suit by various System lending institutions challenged both the charter amendment and the merger. *See First S. Prod. Credit Ass'n v. Farm Credit Admin.*, 926 F.2d 339 (4th Cir. 1991). The Fourth Circuit held that the forced merger was unlawful but did not reach the lawfulness of the FCBT's charter as amended. *Id.* at 344 n.2, 347.

The Congress then enacted the 1992 Amendment, which confirmed that "[n]otwithstanding any other provision of law, the Farm Credit Bank of Texas may act in accordance with the exclusive charter of the bank, as amended." § 401(b)

(codified at 12 U.S.C. § 2011 note). The Amendment also prevented the FCA from

> issu[ing] a charter to, or approv[ing] an amendment to the charter of, any institution . . . that would authorize the institution to exercise lending authority . . . in a territory in which the charter of another such institution authorizes the other institution to exercise like authority . . . except with the approval of [the other institution].

§ 401(c) (codified at 12 U.S.C. § 2252(a)(2)(B)). This restriction was made applicable only to the former Jackson territory. *Id.* (codified at 12 U.S.C. § 2252(a)(2)(C)). Thus the 1992 Amendment confirmed the authority of the FCBT to act within the Jackson territory.

The FCBT claims § 401(b) gives it the exclusive right to "make or participate in long-term real estate mortgage loans" in the Jackson territory. It also claims § 401(c) prevents the FCA from issuing a regulation that would have the same effect as a prohibited charter amendment. The district court held, and the FCA argues on appeal, that the FCBT forfeited these claims. Like the district court, the FCA reasons that the FCBT's comment properly did not include an objection based upon the 1992 Amendment because the comment did not focus upon loan participations, which are the sole subject matter of the Final Rule.

There was no forfeiture. The FCBT argued in its comment that because its charter authorized it to "*make* or *participate in* long-term real estate mortgage loans" and was exclusive, "only the Farm Credit Bank of Texas may engage in long-term lending in the area its charter covers." *Plaintiffs' Comment* at 24 (emphasis added). The FCBT's objection by its terms clearly extended both to direct lending and to participations. Likewise, the FCBT stated that the FCA could not permit another institution in the System "to exercise the same *lending authority* in any part of the former Jackson district" without its consent. *Plaintiffs' Comment* at 24 (emphasis added). "Lending authority" is the term used in § 401(c), which suggests the FCBT's objection was as broad as the statute upon which it was relying. We think its

comment fairly put the FCA on notice that the FCBT object-ed to permitting any other institution in the System to exercise any lending authority, including participating in loans originated by another, anywhere within its territory.

The focus of the district court and of the FCA upon the FCBT's failure in its comment to object specifically to the authorization of loan participations in the Proposed Rule misses the point. The FCBT did not object specifically to direct lending either; it objected more broadly to the FCA permitting any other institution in the System to "engage in long-term lending" in its territory. Similarly, the FCBT's legal argument applies equally to direct lending and to partic-ipations, and it specifically mentioned that its assertedly "exclusive" charter authorized participations. In these cir-cumstances it would be odd indeed to interpret the FCBT's comment as applying only to direct lending.

Turning to the merits of the FCBT's objection, however, we are unpersuaded. Section 401(c) clearly prohibits the FCA, without the FCBT's consent, from issuing or changing a charter so as to allow competition in the former Jackson territory; but it just as clearly does not prohibit the FCA from doing anything else – such as changing a regulation – that would have a similar effect. The FCBT has provided us with no persuasive reason to read into the statute a wider prohibition than the Congress expressly put there.

The FCBT's other argument based upon the 1992 Amend-ment, that § 401(b) ratified the "exclusive" nature of its charter, is also unavailing. The provision upon which the FCBT relies is concerned with granting authority to the FCBT rather than denying it to other institutions: "Notwith-standing any other provision of law, the Farm Credit Bank of Texas may act in accordance with the exclusive charter of the bank." § 401(b). We understand the reference to the "ex-clusive charter of the bank" as recognizing the stricture simultaneously imposed upon the FCA by § 401(c) rather than an independent grant of authority, that is, rather than an implicit and unremarked amendment to the FCBT's char-ter. That the Congress enacted the 1992 Amendments in the

aftermath of the *First South* litigation, in which the validity of the FCBT's charter was questioned, strongly reinforces this understanding.

## C. Remedy

There remains the matter of the proper remedy. The plaintiffs have asked us to vacate the Final Rule. "[V]acatur is not necessarily indicated," however, "even if an agency acts arbitrarily and capriciously in promulgating a rule." *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1048 (D.C. Cir. 2002), *reh'g granted on other issue*, 293 F.3d 537. Rather, "[t]he decision whether to vacate depends on the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." *Id.* (quoting *Allied-Signal, Inc. v. United States Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993)).

Here it is not unlikely the FCA "will be able to justify a future decision to retain the Rule," *id.* at 1049, inasmuch as its only error was its failure to explain what seems to be a policy difference with the plaintiffs. At the same time, vacatur is sure to be "disruptive" because it would preclude a set of voluntary transactions that both originating and participating System lenders find advantageous. In these circumstances, we think "the probability that the [FCA] will be able to justify retaining the [Final] Rule is sufficiently high that vacatur of the Rule is not appropriate." *Id.*

## III.   Conclusion

For the foregoing reasons, the judgment is reversed and the case is remanded to the district court with instructions to enter judgment for the plaintiffs to the extent of remanding the Final Rule to the Agency to respond to the plaintiffs' comment.

*So ordered.*