**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 19-7246**

———————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARCUS ROOSEVELT TAYLOR,

Defendant - Appellant.

———————————

**No. 21-4422**

———————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARCUS ROOSEVELT TAYLOR,

Defendant - Appellant.

———————————

Appeals from the United States District Court for the District of Maryland, at Baltimore. Catherine C. Blake, Senior District Judge. (1:17-cr-00106-CCB-6)

———————————

Argued:  October 26, 2022                        Decided:  March 10, 2023

———————————

Before KING and HEYTENS, Circuit Judges, and Sherri A. LYDON, United States District Judge for the District of South Carolina, sitting by designation.

---

Affirmed by published opinion. Judge Heytens wrote the opinion, in which Judge King and Judge Lydon joined. Judge Lydon wrote an opinion concurring in the judgment.

---

**ARGUED:** Gerald Chester Ruter, LAW OFFICES OF GERALD C. RUTER, P.C., Baltimore, Maryland, Appellant. Patrick Garrett Selwood, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Erek L. Barron, United States Attorney, Leo J. Wise, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

---

TOBY HEYTENS, Circuit Judge:

Federal law says a district court "shall order" certain defendants to "make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). Here, a person convicted of robbery insists he should not have to make restitution because at least some of the cash and personal property he stole were proceeds of illegal drug sales and the government failed to prove what (if any) portion was not so tainted. That argument has no basis in the statutory text. We thus affirm.

I.

Marcus Taylor was a detective in Baltimore's Gun Trace Task Force, a unit charged with investigating firearms-related crimes. After a trial where the government showed Taylor and some of his colleagues stole money, drugs, and other items on the job, a jury convicted him of Hobbs Act robbery and racketeering offenses. The district court sentenced Taylor to 18 years of imprisonment, to be followed by 3 years of supervised release. This Court affirmed. See *United States v. Taylor*, 942 F.3d 205 (4th Cir. 2019).

This appeal challenges the district court's later-imposed restitution order. The court ordered Taylor to make restitution to two people from whom he and his confederates stole cash, personal property, and illegal drugs. The district court did not order restitution for the drugs. It did, however, order Taylor to pay $228,304 in restitution for the cash and personal property.

Taylor claims the restitution order is unwarranted and unsupported. The people to whom the court ordered Taylor to make restitution testified against him under grants of immunity. Both admitted to selling drugs, and one said at least some of the stolen cash—

3

$15,970 taken from a closet—came from illegal drug sales. Based on that testimony, Taylor argued these people were not "victim[s]" under 18 U.S.C. § 3663A(a)(2) because "[t]he proceeds of illegal activity are not the property of the person who obtained the funds through that activity" and the government failed to prove that either the cash or personal property was "untainted." JA 1128–29.

The district court did not resolve how much of the stolen cash derived from drug sales or whether the stolen items of personal property were bought with such tainted funds. Instead, the court concluded "the plain text" of the relevant statute "does not limit restitution based on the conduct of the person who experienced pecuniary loss." Supp. JA 81. We review that issue of statutory construction de novo. See *United States v. Abdelbary*, 746 F.3d 570, 574 (4th Cir. 2014).

## II.

The language of the Mandatory Victims Restitution Act (MVRA) is straightforward. "[W]hen sentencing a defendant convicted of an offense described in subsection (c), the court shall order . . . that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). The "offense[s] described in subsection (c)" include "an offense against property under this title" "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." § 3663A(c)(1)(A)(ii) & (B). And "victim," in turn, "means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." § 3663A(a)(2).

Here, several of the relevant questions are open and shut. As the district court noted, "Taylor does not dispute that the offenses for which he was convicted are covered by the

4

MVRA or claim that he was not involved in the robberies." Supp. JA 81. Nor does Taylor claim that the MVRA's "shall" means anything besides "must." See Taylor Br. 9 (acknowledging "restitution under Section 3663A is mandatory").

To the extent Taylor offers a textual basis for his position, he grounds it mainly in the statutory words "pecuniary loss." 18 U.S.C. § 3663A(a)(2), (c)(1)(B); see Taylor Supp. Br. 2 ("The Appellant has posited that one cannot experience pecuniary harm when that which has been illegally taken from him is contraband or the fruits of criminal activity."). But Taylor develops no argument why that term excludes cash or personal property derived from illegal activity, and merely saying something does not make it so. At bottom, Taylor's raw assertions "sound more of *ipse dixit* than reasoned explanation." *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 543 (1985).

In any event, we are unpersuaded. "[P]ecuniary loss" has had a consistent meaning since the 17th century, and it refers broadly to "[a] loss of money or of something having monetary value." *Loss*, Black's Law Dictionary (11th ed. 2019). We are aware of no authority—and Taylor cites none—saying a person's previously unlawful conduct has any bearing on whether the person suffers a pecuniary loss from (or is proximately harmed by) a robbery. Cf. U.S.S.G. § 2B1.1 application note 3(A)(iii) (defining "pecuniary harm" for offenses involving stolen property as "harm that is monetary or that otherwise is readily measurable in money").

If there is any textual warrant for Taylor's position, it must come from the word "restitution" itself. The MVRA does not define the term, and as best we can tell, neither does any other federal statute. But "restitution has deep common law roots," *United States*

5

*v. Grant*, 715 F.3d 552, 553 (4th Cir. 2013), and "[w]hen a statutory term is obviously transplanted from another legal source, it brings the old soil with it." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (quotation marks omitted). Given that, Taylor might have a winning argument *if* the common law barred restitution for cash or personal property obtained through unlawful conduct. Cf. Taylor Br. 12 ("The question we ask this Court to answer is not whether [the two people] were robbed but rather whether [they] are entitled to restitution . . . .").

The problem for Taylor is the common law rule appears to have been the opposite. Indeed, an illustration from the Restatement (First) of Restitution—published in 1937— provides:

> A steals B's chattels. C steals them from A. A is entitled to restitution from C . . . since A's wrong to B is not connected with C's wrong to A.

Restatement (First) of Restitution § 140 ill. 4. Or, to put the example in the language of this case: Person A obtains cash and personal property by selling drugs. Taylor and his confederates steal the cash and personal property from A. Taylor must make restitution to A "since A's wrong [in selling drugs] is not connected with [Taylor's] wrong to A." *Id.* [1]

---

[1] As the district court noted, some "courts have recognized a 'coconspirator exception' . . . to preclude the award of restitution to persons who were participants in the offense of conviction and shared the defendant's criminal intent." Supp. JA 82. We need not decide whether that view is correct. We note, however, that it appears consistent with the First Restatement, which provides restitution may be withheld in situations involving "criminal or other wrongful conduct in connection with the transaction on which [the] claim [for restitution] is based." Restatement (First) of Restitution § 140; see *United States v. Ojeikere*, 545 F.3d 220, 223 (2d Cir. 2008) ("[R]estitution would not be appropriate if one burglar were to rob another of the proceeds of a heist they have just committed.").

6

The broader statutory context further undermines Taylor's argument. If a defendant's otherwise mandatory restitution obligation depended on the way victims obtained the property later stolen from them, Congress would have had every reason to establish procedures for district courts to acquire that kind of information. Congress, however, has not done so—a silence made all the more notable given the mechanisms Congress did establish for obtaining information relevant to restitution.

For example, to assist district courts with awarding restitution, federal law requires the probation officer, the attorneys for the government, and the defendant to submit information involving "the losses to each victim" and "the economic circumstances of [the] defendant." 18 U.S.C § 3664(a); see § 3664(d)(1), (d)(3). But none of the specified information addresses how a person from whom money or property was stolen obtained that money or property in the first place. The same statute instructs the probation officer to "provide notice to all identified victims" of "the opportunity . . . to submit information to the probation officer concerning the amount of the victim's losses." § 3664(d)(2)(A) & (A)(iii). That provision likewise says nothing about directing victims to document how they acquired the property for which they are seeking restitution—much less cautioning victims their own conduct may be scrutinized as part of the restitution inquiry. The most natural explanation for these omissions is that such matters are not part of the restitution process.

The same is true of Congress's failure to provide any mechanism for a sentencing court to resolve disputes about how a victim acquired the lost or damaged property. Although one of the people to whom Taylor was ordered to make restitution admitted some

of the stolen cash was drug proceeds, the same person insisted the rest was lawfully earned from his job as a painter. Taylor, in contrast, suggests all the stolen cash and property were drug proceeds.

The restitution statutes supply no rules for how district courts are to resolve these sorts of questions. Is property for which restitution is sought presumed clean or tainted? Must a defendant who claims it is tainted submit pleadings or allegations sufficient to survive a plausibility standard? Is discovery permitted? May the defendant demand an evidentiary hearing about the source of the taken property? Call witnesses to testify about the victim's conduct? Cross-examine the government's witnesses? The federal restitution statutes' failure to address any of these questions suggests those statutes do not contemplate the sort of inquiry Taylor seeks.[2]

Taylor's position also flouts multiple provisions designed to protect victims during the restitution process and ensure the focus remains on the defendant's wrongful conduct. Most obviously, Congress instructed "[n]o victim shall be required to participate in any phase of the restitution order" and may "at any time assign the victim's interest in restitution payments to the Crime Victims Fund in the Treasury without in any way

---

[2] In contrast, Congress *has* provided detailed procedures for actions brought by the government to forfeit contraband or proceeds of unlawful activity. See 21 U.S.C. § 881, 18 U.S.C. § 981. The government suggests it could not pursue forfeiture proceedings against Taylor's victims because of their immunity agreements. Oral Arg. 32:51–33:15. Whether or not that is true, cf. *United States v. Ursery*, 518 U.S. 267, 288–89 (1996) (emphasizing forfeiture is a civil proceeding against property and is "not a criminal sanction"), these provisions confirm Congress knows how to establish procedures for determining whether particular assets were proceeds of illegal conduct.

8

impairing the obligation of the defendant to make such payments." 18 U.S.C. § 3664(g)(1) & (2).

As a practical matter, however, Taylor's proposed rule would pressure victims to participate. Recall, Taylor's argument is that people whose property or money was obtained through unlawful means are not entitled to restitution because they have not suffered the right type of "loss." And, under federal law, "[t]he burden of demonstrating the amount of the *loss* sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. § 3664(e) (emphasis added). So, if Taylor's view were right, a defendant facing mandatory restitution could assert no award is warranted because of the victim's unlawful conduct and use the victim's non-participation to argue the government failed to meet its burden of proving the contrary.

At bottom, the pull of Taylor's argument comes from appeals to policy rather than the language of the MVRA. See Taylor Br. 17 (asserting that ordering restitution for "the proceeds of [crime] should shock the collective conscience of this Court"). "As usual," however, "there are (at least) two sides to the policy question before us," and "a rational Congress could reach the policy judgment the statutory text suggests it did." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021).

Take Taylor's insistence that it makes no sense to say a person who has illegal drugs stolen may not obtain restitution for the street value of the drugs but can get restitution if the drugs were sold for cash right before the theft. The former result (no restitution for stolen drugs) flows directly from the text of federal statutes and longstanding principles, which require restitution of the "property of a victim," 18 U.S.C. § 3663A(b)(1), while

9

reaffirming that "no person may assert an ownership interest . . . in contraband or other property that it is illegal to possess," § 983(d)(4). See *Property*, Black's Law Dictionary (11th ed. 2019) (defining "personal property" as a "movable or intangible thing that is subject to ownership"). By contrast, a person does "own[]"—and thus has a property interest in—the proceeds of illegal activity unless *and until* "the Government wins a judgment of forfeiture." *United States v. Parcel of Land, Bldgs., Appurtenances & Improvements, Known as 92 Buena Vista Ave.*, 507 U.S. 111, 127 (1993) (plurality op.); see also *id.* at 131 (Scalia, J., concurring in the judgment) (describing the "*retroactive* vesting of title [to the government] that operates only upon entry of [a] judicial order of forfeiture").

The rest of Taylor's policy arguments rely on a bit of rhetorical sleight of hand by lasering in on his victims' conduct while ignoring his own. If Taylor's victims obtained the property in question through (or with the proceeds of) unlawful conduct, their actions are blameworthy and their right to the property may well be inferior to that of the government or other third parties. But it would be, at minimum, *rational* for Congress to conclude that is a matter between Taylor's victims and those third parties, and that Taylor should not be able to escape the duty to make restitution for his own crimes by questioning the way his victims acquired the things he stole. Indeed, such an approach would seem most consistent with Congress's goal of providing "full restitution to all identifiable victims of covered offenses, while guaranteeing that the sentencing phase[s] of criminal trials do not become fora for the determination of facts and issues better suited to civil proceedings." *United*

*States v. Newsome*, 322 F.3d 328, 340 (4th Cir. 2003) (quoting the Senate Report for the MVRA)).

*    *    *

In the end, "no amount of policy-talk can overcome plain statutory text." *Julmice v. Garland*, 29 F.4th 206, 210 (4th Cir. 2022) (quotation marks and formatting omitted). Regardless of Taylor's policy objections, the district court correctly determined the MVRA requires him to make restitution to his victims. The judgment of the district court is thus

*AFFIRMED*.

SHERRI LYDON, District Judge, concurring in the judgment:

I concur in the judgment and agree with Judge Heytens's careful analysis of the issue before the court. Congress enacted laws to make victims whole through mandatory restitution. Congress also enacted laws to ensure criminals are deprived of the proceeds of their crimes through forfeiture. Both goals are equally important. And when properly used in tandem, restitution and forfeiture laws can ensure both of Congress's goals are met.

Footnote 2 of Judge Heytens's opinion acknowledges the "detailed procedures" associated with forfeiture, but for the purpose of contrasting the two statutory schemes: mandatory restitution versus forfeiture. Missing from footnote 2 is the important role forfeiture plays as to the facts of this case. Restitution is mandatory. Under our facts, mandatory restitution accomplishes Congress's goal of making victims whole; but by doing so, it returns admitted ill-gotten gains to a drug dealer. This is where forfeiture comes in. Though, here, the Government suggests that its immunity deal "forfeited" its ability to pursue those ill-gotten gains through forfeiture. Despite the Government's suggestion to the contrary, forfeiture, if properly invoked, ensures those admitted ill-gotten gains do not stay in the hands of the drug dealer. Thus, I write separately to expand on the importance of forfeiture, particularly as it relates to the $15,970 of admitted ill-gotten gains that Marcus Taylor stole from Shawn Whiting.

I.

This case falls neatly into the adage, "two wrongs don't make a right." To set up the "two wrongs" at issue, let's briefly return to the facts.

12

The appellant in our case, Marcus Taylor, was a detective with the now-defunct Baltimore Police Department's Gun Trace Task Force (GTTF). On January 24, 2015, and in his role as a GTTF detective, Taylor and others executed a search warrant at Shawn Whiting's home. J.A. 101–02. During the search, Taylor and the other GTTF detectives found heroin and over $23,000 in cash. J.A. 102–04, 110–12, 252–54, Suppl. J.A. 60. Whiting was arrested and charged with a drug crime. J.A. 235, 246.

Almost 14 months later, on March 22, 2016, Taylor (still a member of the GTTF) and other task force officers surrounded a car with two individuals inside. J.A. 764–69, 782–83. Inside the car, one individual, Oreese Stevenson, was attempting to sell cocaine to the other. J.A. 769–70. Stevenson was arrested, handcuffed, and transported to jail. Shortly after the arrest, Taylor and the other detectives proceeded to Stevenson's home, where they discovered guns, cocaine, and over $200,000 in cash. J.A. 772–75.

We know from the preceding opinion, of course, that neither Whiting's alleged wrongdoing nor Stevenson's alleged wrongdoing is the subject of this case. Shortly after the arrests of Whiting and Stevenson, an even more egregious wrong came to light—public corruption.

As a GTTF detective, Taylor stole money, personal property, and illegal drugs from Whiting and Stevenson during the January 2015 and March 2016 events. Those thefts, of course, were the subject of Taylor's trial, subsequent conviction, and the restitution order that is the subject of this appeal. And Taylor's thefts constitute one of our two wrongs. But where does that leave the alleged wrongdoing of Whiting and Stevenson?

13

Stevenson and Whiting are admitted—but not convicted—drug dealers. At Taylor's trial, Stevenson and Whiting admitted to possessing drugs with the intent to distribute to others for profit. J.A. 236–37, 762–63. When stopped by police, Stevenson had a half kilogram of cocaine in his car, and his passenger was carrying a backpack with $21,500 in cash inside. J.A. 769–71. When police entered his home, they found nearly 10 kilograms of cocaine, $200,000 in a safe in the basement, and another $40,000 in a black bag. J.A. 774–78. Whiting later testified that he had 4.5 kilos of heroin in his house, though he was only later charged with 3 kilograms. J.A. 777. He also had over $23,000 in cash at his home. Stevenson and Whiting were granted immunity and never convicted of a federal controlled substance offense for the conduct that was the subject of their testimonies at Taylor's trial.

In exchange for their testimony against Taylor, they were granted immunity by federal prosecutors. During Taylor's trial, both Stevenson and Whiting testified to lawful and unlawful sources of income. On the lawful side, Stevenson testified to working as a truck driver and operating a small business with his wife, and Whiting testified to working as a painter. J.A. 762, 773. Stevenson did not testify to the source of the money or personal property that was stolen from him by Taylor. Whiting, in contrast, testified that of the $23,970 in cash taken from his home, $15,970 came from illegal drug sales, *i.e.*, constituted ill-gotten gains. J.A. 236–37. Whiting's admitted ill-gotten gains are our other wrong and the primary focus of this opinion.

With our two wrongs defined, we can turn to whether those wrongs would be righted by a district court's award of restitution. On the one side, if restitution is not awarded,

14

Taylor (a convicted criminal) keeps the fruits of his criminal actions—the money and personal property[1] taken from Stevenson and Whiting.[2]  In that situation, no wrong is remedied.  We are squarely within the parameters of our guiding phrase.  Two wrongs.  No rights.  On the other side, if restitution is awarded, one wrong—Taylor's—is righted.  An award of restitution rights Taylor's wrong by requiring him to return the money and value

---

[1]    As explained by Judge Heytens, no persons have an ownership interest in the illegal drugs taken by Taylor.  *Compare* 21 U.S.C. § 881(a) (outlining property subject to forfeiture to the United States under the Controlled Substances Act (CSA)), *with* 18 U.S.C. § 983(d)(4) (noting that for purposes of the innocent owner defense to civil forfeiture, "no person may assert an ownership interest under this subsection in contraband or other property that it is illegal to possess").  Under the CSA, both controlled substances "manufactured, distributed, dispensed, or acquired in violation [of the Act]" and "moneys . . . furnished . . . in exchange for a controlled substance . . . in violation of [the Act]" are subject to forfeiture to the United States.  21 U.S.C. § 881(a)(1), (6).  The difference between the two for purposes of this analysis being that a person may have an ownership interest in money or other property connected to the sale of a controlled substance, but that person does not, pursuant to federal forfeiture law, have an ownership interest in the contraband itself.  Thus, for purposes of the restitution analysis, the court must analyze the contraband separately from the money.

[2]    The focus of this opinion is the MVRA.  The Court was asked to determine whether the victims of Taylor's crimes were properly granted restitution under the Act. Interestingly, however, the Government could have avoided this entire "two wrongs" quandary.  Here's how:  The money that Taylor stole from Stevenson and Whiting was the proceeds of RICO and Hobbs Act offenses and subject to forfeiture pursuant to 18 U.S.C. § 1963(a)(3) (RICO proceeds) and/or 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) (authorizing the criminal forfeiture of Hobbs Act proceeds). *See United States v. Blackman,* 746 F.3d 137, 143 (4th Cir. 2014) (holding that the imposition of a forfeiture order in the form of a money judgment is mandatory when requested by the Government). If that happened in this case, there would have been no need to order Taylor to pay restitution to anyone to prevent him from retaining the fruits of his crimes. *Cf. United States v. Ursery,* 518 U.S. 267, 291 (1996) (forfeiture "serves the additional nonpunitive goal of ensuring that persons do not profit from their illegal acts").  Why the Government did not seek a criminal forfeiture order as part of Taylor's sentence is not clear, but to the extent that its failure to do so created the instant quandary, it is the Government's fault. Nevertheless, the Government's failure to pursue the criminal forfeiture of the proceeds of Taylor's crime in his criminal case does not foreclose it from seeking civil forfeiture under 21 U.S.C. § 881(a)(6).

15

of the property he stole from Stevenson and Whiting. This is the correct result and the one mandated by the plain language of the Mandatory Victims Restitution Act (MVRA). And it is for that reason that I sign onto Judge Heytens's opinion.

The troubling issue is that, through the righting of Taylor's wrong, admitted ill-gotten gains are returned to Whiting. I am not alone in feeling unsettled about this outcome. Courts have expressed disapproval of the idea of returning ill-gotten gains through restitution. *See, e.g., United States v. Ojeikere*, 545 F.3d 220, 223 (2d Cir. 2008) (affirming restitution order because victims were not *in pari materia* with defendant but also noting "Ojeikere has not demonstrated that his victims lost ill-gotten gains"); *United States v. Agate*, 613 F. Supp. 2d 315, 321 (E.D.N.Y. 2009) (outlining a "number of courts [that] have examined the question of whether an individual who loses ill-gotten gains may be awarded restitution as a 'victim' under the MVRA"); *United States v. Martinez*, 978 F. Supp. 1442, 1454 (D.N.M. 1997) ("An order of restitution . . . would involve the court directly and intimately in returning ill-gotten gains. A court's participation in such an endeavor would, at the least, be unseemly.").[3] And in at least one case in which the victims

---

[3]     As a brief aside, the *Martinez* court's concern about whether it is appropriate for a court to return ill-gotten gains is understandable. It takes only an examination of restitution's common-law roots, however, to see that the law contemplates a court returning money and property even when it was obtained unlawfully by the person seeking restitution. Illustration 4 from the Restatement (First) of Restitution demonstrates this point:

> A steals B's chattels. C steals them from A. A is entitled to restitution from C, unless C has returned the chattels to B, or being authorized, defends on behalf of B, since A's wrong to B is not connected with C's wrong to A.

16

of the crime at issue were drug dealers, a district court declined to order restitution because

the PSR noted that "restitution would be inappropriate as it would return contraband to the

victim." *United States v. Azaryev*, No. 17-CR-478, 2018 WL 4583488, at *7 (E.D.N.Y.

Sept. 24, 2018). In fact, even the district court in this case noted it was "mindful of Taylor's

---

Restatement (First) of Restitution § 140 ill. 4. The illustration shows that B has the most superior right or interest in the property because B is the rightful owner. But when C steals the property from A (the person who stole it from B) and A seeks restitution, as between C and A, A has the superior right or interest in the property. Thus, a court will award restitution to A unless, of course, C has returned the property to B (the rightful owner) or has authority to defend the restitution claim on B's behalf. This is a logical result because it focuses on the particular issue presented to the court: As between C and A, who has the superior interest in the property? The answer must be A because, following a restitution award to A, B could pursue his claim against A. The property is returned in the reverse order in which it is taken. Thus, despite the *Martinez* court's concern, there is nothing "unseemly" about a court awarding restitution in this context.

I also briefly note here that while I agree with Judge Heytens's opinion's reliance on the Restatement (First) of Restitution, I believe the support for affirming the district court order is found in § 140, as opposed to Illustration 4. Analogizing Illustration 4 to the facts of this case is difficult. There is no Person B under our facts. Judge Heytens's opinion replaces the portion of the illustration that says, "A steals B's chattels," with "Person A obtains cash and personal property by selling drugs." The problem with that replacement is that the persons who purchased the drugs from Person A cannot qualify as Person B. As Judge Heytens's opinion explains, once cash is exchanged for illegal drugs, the persons purchasing the drugs no longer have an ownership interest in the cash. Therefore, at the moment Person A obtains cash from Person B in exchange for drugs, Person B has no ownership interest in the cash held by Person A. Similarly, the government could not serve as Person B. We know from Judge Heytens's opinion that the government's interest in ill-gotten gains is not perfected until there is a forfeiture order—an order that does not exist in this case. Without a forfeiture order, the government is not Person B.

Regardless of the illustration, § 140 alone is sufficiently analogous to support the district court's decision in this case. It states: "A person may be prevented from obtaining restitution for a benefit because of his criminal or other wrongful conduct in connection with the transaction on which his claim is based." Restatement (First) of Restitution § 140. Carrying that language over to our facts, Stevenson and Whiting are not "prevented from obtaining restitution for a benefit because of [their] criminal or other wrongful conduct" because it was not "in connection with the transaction on which [their] restitution claim[s] are based."

17

policy argument that the MVRA should not be used to reward individuals for their ill-gotten gains." Supp. J.A. 83. But as Judge Heytens points out—and I agree—the issue is quintessentially one of policy.

The court's "role is to interpret law created by others." *Danforth v. Minnesota*, 552 U.S. 264, 290 (2008). It does "not prescribe what [the law] shall be," for that is the role of Congress. *Id.* (citing *Am. Trucking Ass'ns, Inc. v. Smith*, 496 U.S. 167, 201 (1990) (Scalia, J., concurring in judgment). More specifically, "[j]udges are not free to take the general purpose of a statute and choose the means to implement it, because it is in the delineation of means as well as the prescription of purposes that Congress makes its intentions clear." *First S. Prod. Credit Ass'n v. Farm Credit Admin.*, 926 F.2d 339, 346 (4th Cir. 1991).

For purposes of this case, if Congress desires to remedy ill-gotten gains being returned to those who have admitted to certain criminal acts under oath, but whom have not been convicted, it must amend the MVRA to create such an exception. We cannot create the exception, and neither can the district court.[4] *See id.* at 347 ("Courts are not the best places to correct congressional oversights—correction must normally await a return to the legislative process.").

---

[4] There is no question that the facts of this case are unique. It is through the MVRA that Taylor's wrong is righted. And after Taylor's wrong is righted, federal forfeiture law steps in to right the other wrong. Thus, there are federal laws in place now that can work in conjunction with the MVRA to ensure ill-gotten gains do not remain in the hands of individuals who admittedly obtained them through illicit means. It is for this reason that I express no opinion on whether Congress should craft an exception to exclude admitted ill-gotten gains from an award of restitution under the MVRA.

18

II.

So that's it?  We are left with federal law only allowing one wrong to be made right?  Not so.  This is where the importance of Judge Heytens's footnote 2 becomes evident.

Judge Heytens references the "detailed procedures for actions brought by the government to forfeit contraband or proceeds of unlawful activity" to support the argument that the absence of such procedures in the MVRA suggests Congress never intended courts analyze the source of the victim's losses.  But those detailed forfeiture procedures serve another purpose.  They are critically important to righting the second wrong in our case.  Here's why:  Because Stevenson and Whiting were granted immunity for their testimonies against Taylor, *criminal* forfeiture is not an option here.  *See* 18 U.S.C. § 982(a) (allowing forfeiture as part of the court "imposing [a] sentence on a person *convicted of* an offense") (emphasis added).  Further, as part of the immunity deal and to prevent any ill-gotten gains from returning to the "victims," the Government could have required Stevenson and Whiting to "assign [their] interest[s] in restitution payments to the Crime Victims Fund in the Treasury."  18 U.S.C. § 3664(g)(2); *see Agate*, 613 F. Supp. 2d at 326 (describing a cooperator's waiver of the right to receive restitution through an assignment to the Crime Victims Fund; "An appropriate resolution was achieved. Vollaro will not receive any of the restitution ordered in his favor, but the defendants will still be required to pay for the losses they caused.").  But, in this case, there is no evidence in the record suggesting that such a waiver was obtained by the Government.  As a result, *civil* forfeiture is the last available mechanism that exists to right the second wrong.

19

Civil forfeiture, unlike criminal forfeiture, does not require a conviction as a prerequisite to forfeiture of the property. *United States v. One Parcel of Real Estate Located at 7715 Betsy Bruce Lane Summerfield, N.C.*, 906 F.2d 110, 111–12 (4th Cir. 1990) ("In civil forfeiture cases, property is subject to forfeiture 'even if its owner is acquitted of—or never called to defend against—criminal charges.'" (citation omitted)).  It is an *in rem* action against the property itself.  The Government would bear the burden of proof to establish, by a preponderance of the evidence, that the property is subject to forfeiture.  18 U.S.C. § 983(c).  Presumably then, the Government's immunity deal would not prevent it from pursuing a civil forfeiture action against the money returned to Whiting that he admittedly obtained through selling drugs.[5]  But the decision to pursue such an action is that of the Government, not this court.

The point of this analysis is to show that despite Taylor's best arguments to the contrary, returning admitted ill-gotten gains to Whiting through the district court's restitution award does not show a flaw or absurdity in the MVRA.  It shows that existing federal statutory and common law remedy both wrongs when appropriately followed.  If the Government is unable to right the second wrong, it is because of its immunity deal.  It

---

[5] The focus of this concurring opinion is the $15,970 in admitted ill-gotten gains that are being returned to Whiting pursuant to the district court's restitution order.  That is the amount Whiting admitted was associated with illegal drug activity.  But the $15,970 is just a small portion of $228,304 total restitution awarded to Whiting and Stevenson.  To the extent the Government believes it can meet its burden of proof under 18 U.S.C. § 983(c) as to the remaining $212,334, nothing in this opinion should be construed as suggesting that only $15,970 would be subject to a civil forfeiture action.  The Government retains the right and ability—assuming not foreclosed by its immunity deal—to pursue forfeiture of any money or property that bears the required connection to illegal drug activities.

20

must take ownership of that decision.  Not this court.  Not the district court.  And not Congress.

\*     \*     \*

The facts of this case reveal two wrongs.  The district court, through an order of restitution mandated by the MVRA, righted one wrong.  It is left to the Government to right the other.