**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-4

STEPHEN COREY BRYANT,

Petitioner – Appellant,

v.

BRYAN P. STIRLING, Commissioner, South Carolina Department of Corrections; LYDELL CHESTNUT, Deputy Warden, Broad River Road Correctional Institution Secure Facility,

Respondents – Appellees.

-------------------------------

FASD UNITED,

Amicus Supporting Appellant.

Appeal from the United States District Court for the District of South Carolina, at Beaufort. David C. Norton, District Judge. (9:16-cv-01423-DCN)

Argued: October 29, 2024                                Decided: January 27, 2025

Before NIEMEYER, RUSHING, and HEYTENS, Circuit Judges.

Affirmed by published opinion. Judge Heytens wrote the opinion, which Judge Niemeyer and Judge Rushing joined.

**ARGUED:** Laura K. McCready, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlotte, North Carolina, for Appellant. Melody Jane Brown, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellees. **ON BRIEF:** John G. Baker, Federal Public Defender, Gretchen L. Swift, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlotte, North Carolina; E. Charles Grose, Jr., GROSE LAW FIRM, LLC, Greenwood, South Carolina; Jonathan P. Sheldon, SHELDON & FLOOD, PLC, Fairfax, Virginia, for Appellant. Alan Wilson, Attorney General, Donald J. Zelenka, Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellees. John R. Mills, Nathalie Greenfield, PHILLIPS BLACK, INC., Oakland, California, for Amicus Curiae.

---

TOBY HEYTENS, Circuit Judge:

Stephen Bryant was sentenced to death by a South Carolina state court. During post-conviction proceedings, a state trial court permitted Bryant to file a new application for relief asserting his execution would violate the Eighth Amendment because he has intellectual disabilities within the meaning of *Atkins v. Virginia*, 536 U.S. 304 (2002), and *Hall v. Florida*, 572 U.S. 701 (2014). More than a year and a half later, Bryant sought to amend that application to add a claim that he also suffers from fetal alcohol spectrum disorder (FASD) and that "a natural extension of" *Atkins* and *Hall* means the Eighth Amendment prohibits executing people with FASD as well. JA 522. The state post-conviction court denied Bryant's request to add the FASD claim, concluding it was both impermissibly successive and filed too late. We conclude that ruling rested on state procedural grounds that are independent of federal law and adequate to bar federal habeas review. We thus affirm the district court's denial of habeas relief.

I.

In 2008, Bryant pleaded guilty to multiple criminal charges (including murder) in South Carolina state court. A state trial court judge sentenced Bryant to death. Bryant appealed, raising only a single claim: that the sentencing court committed reversible error by excluding testimony corroborating his claim that his father sexually abused him. The state's highest court denied relief.

As permitted by South Carolina law, Bryant next sought post-conviction relief from the state trial court on seven bases. The claims involved ineffective assistance of counsel, incorrect evidentiary rulings, and the prosecution's failure to disclose exculpatory

3

evidence; none asserted Bryant's execution would violate the Eighth Amendment. The state trial court denied relief, South Carolina's highest court denied discretionary review, and the Supreme Court denied certiorari.

In 2016, Bryant sought a writ of habeas corpus in federal district court. Under a heading labeled "New Claims Not Presented to the State Court" (JA 84), Bryant asserted he "is Intellectually Disabled so his Execution is Barred by *Atkins v. Virginia*," JA 88. Bryant asked the district court to stay the federal proceedings so he could exhaust state remedies, and the district court granted that request.

Bryant also filed two new applications for post-conviction relief with the state trial court. One application—which Bryant calls the second application—asserted that Bryant's death sentence violates the Eighth Amendment "because he suffers from Intellectual Disabilities" and cited three authorities, including *Atkins* and *Hall*. JA 430. The other application—which Bryant calls the third application—raised four ineffective assistance of counsel claims.

The state trial court treated the two applications differently. The court dismissed the third application, concluding it was "both untimely and improperly successive." JA 134. In contrast, the state trial court denied the government's motion to dismiss Bryant's second application. The court noted that the Supreme Court's decisions in *Atkins* and *Hall* render people with intellectual disabilities "categorically exempt from the death penalty." JA 811 n.7. This fact, the state trial court reasoned, raised "unique considerations" and meant "Bryant cannot be precluded from raising Intellectual Disabilities at this time in this manner." JA 810.

In 2018—almost 22 months after the state trial court denied the government's motion to dismiss his second post-conviction application—Bryant moved to amend that application to add a new claim. Along with repeating, verbatim, the previous application's language about intellectual disabilities, the proposed amended application sought to add a claim that Bryant's death sentence "violates the Eighth Amendment of the United States Constitution because he suffers from Fetal Alcohol Spectrum Disorder ('FASD')." JA 521. The proposed amended application argued that people with "FASD suffer from impairments to an equal or greater extend [sic] as people suffering from Intellectual Disabilities" and that forbidding their execution "is a natural extension of" *Atkins* and *Hall*, both of which involved defendants with intellectual disabilities. JA 521–22.

The state trial court denied Bryant's motion to amend his second application. The court noted Bryant had been allowed to proceed with "a successive action on a precise claim"—that he "is intellectually disabled . . . and exempt from a death sentence pursuant to *Atkins*." JA 382. But the court concluded there was no authority to permit Bryant to make an "[a]mendment to this restricted action." JA 383. The court further concluded that, even if an amendment were permissible as a matter of pleading, it would be futile because Bryant "candidly admit[ted]" he was "attempting to raise a new claim" by seeking "an extension of" the prohibition against executing people with intellectual disabilities to cover those with FASD. JA 383–84. As a result, the court explained, any FASD claim would not "relate back to the original claim" and thus would violate the statutory limitation applicable to untimely and successive actions as a matter of state law. JA 384 (citing S.C. Code § 17-27-45 (barring claims raised more than one year after final judgment as untimely); § 17-

5

27-90 (barring successive claims not raised in original post-conviction application)).

The state court proceedings went forward on Bryant's intellectual disability claim alone. After a hearing, the state trial court found Bryant failed to make two showings necessary to trigger *Atkins*' categorical rule: "significantly subaverage general intellectual functioning" and "deficits in adaptive behavior." JA 406 (quotation marks removed). The court thus denied Bryant's application for post-conviction relief. Both sides petitioned for discretionary review, with Bryant arguing the state trial court should have allowed him to amend his second application to add an FASD claim and the state arguing the trial court erred by permitting the second application to go forward on Bryant's ultimately unsuccessful *Atkins* claim. South Carolina's highest court denied both petitions without written explanation.

The parties returned to federal court and the district court lifted the stay. The respondents moved for summary judgment. They noted the state trial court had rejected Bryant's "claim of intellectual disability" on the merits and argued that Bryant procedurally defaulted any federal court scrutiny of that ruling by failing to contest it during his appeal to the state supreme court. JA 944. In response, Bryant did not challenge the state trial court's finding that he was not intellectually disabled under *Atkins* and *Hall*. Instead, Bryant argued that the state trial court's conclusion that he "defaulted" his claim "that his FASD renders him ineligible for a death sentence" could not bar federal habeas relief because that ruling was neither "independent" of federal law nor was it based on an "adequate" state law ground. JA 1010. For that reason, Bryant argued his FASD-based Eighth Amendment claim was "properly before" the federal district court and that the court should conduct "*de*

6

*novo* review." *Id.*

A magistrate judge recommended granting summary judgment to the respondents. Relevant here, the magistrate judge concluded that Bryant's FASD claim was "procedurally barred" and that a federal habeas court could not consider it on the merits because Bryant failed to establish "cause and prejudice or some miscarriage of justice." JA 1123–24.

The district court agreed with the magistrate judge's bottom-line recommendation but for different reasons. Unlike the magistrate judge, the district court concluded Bryant's FASD claim was not procedurally defaulted because the state trial court's dismissal of that claim "partially relied upon an application of *Atkins*" and thus was not independent of federal law. JA 1157. Even so, the district court denied relief, concluding the state trial court's rejection of Bryant's "*Atkins* claim" was a merits-based determination that *Atkins* "does not create a categorical bar from executing prisoners who suffer from FASD." JA 1160. Having so construed the state trial court's decision, the district court denied relief because the state court's rejection of Bryant's FASD-based claim was neither "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The district court granted a certificate of appealability limited to "whether [its] decision on Bryant's *Atkins* claims should have been resolved in a different manner," JA 1164, or "whether the [state trial court] properly determined that Bryant's claim was procedurally defaulted," JA 1226–27. Bryant does not challenge the state trial court's finding that he is not intellectually disabled, nor does he assert he can show cause or prejudice for not having raised an FASD claim sooner. See *Dretke v. Haley*, 541 U.S. 386,

7

388 (2004) ("Out of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default."). "We review [the] district court's denial of habeas relief de novo," without any deference to the district court. *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012).

## II.

"Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). "These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Id.* For procedural default to apply, the state court's justification for refusing to consider the merits of a habeas petitioner's federal claim must satisfy two requirements. First, the basis for the state court's ruling must be "independent of the federal question" the habeas petitioner seeks to raise. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Second, the state court's ruling must rest on "an adequate ground to bar federal habeas review." *Beard v. Kindler*, 558 U.S. 53, 60 (2009). "Because procedural default constitutes an affirmative defense in habeas cases, the burden rests with a state to prove the adequacy of the relied-on procedural bar." *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010).

8

We agree with the magistrate judge that the state trial court's refusal to permit Bryant to amend his second application to add an FASD claim rested on state procedural grounds that are both independent of federal law and adequate to preclude federal habeas review. We thus decline to consider the merits of Bryant's FASD claim and affirm the district court's denial of habeas relief. See *Gonzalez v. Crosby*, 545 U.S. 524, 538 (2005) (affirming denial of habeas relief on alternative grounds); *Mahdi v. Stirling*, 20 F.4th 846, 895 (4th Cir. 2021) (same).

## A.

The state trial court's reasons for refusing to permit Bryant to add an FASD claim were independent of federal law. The court determined such a claim was not within the scope of the order permitting Bryant to file his second application for post-conviction relief, which was limited "solely to an allegation of intellectual disability." JA 383. It then concluded that permitting Bryant to add his new proposed claim would contradict South Carolina's "statutory limitations regarding successive [post-conviction] applications" and the strict "time bars" applicable to such actions. *Id.* None of those conclusions depends on or involves the interpretation of federal law.

Bryant asserts—and the district court agreed—that the state trial court's refusal to permit his proposed amendment "depends on a federal constitutional ruling." Bryant Br. 32 (quoting *Foster v. Chatman*, 578 U.S. 488, 497 (2016)). Recall that the state trial court previously permitted Bryant to file a successive application for post-conviction relief asserting that his death sentence violates the Eighth Amendment as construed in *Atkins* and *Hall* "because he suffers from Intellectual Disabilities." JA 430. According to Bryant, that

9

means the state trial court "had to interpret *Atkins* to determine whether Bryant's [proposed] amendment" to that application "was allowed" and "necessarily determined that intellectual disability only, and not a functionally equivalent condition, exempts a petitioner from execution." Bryant Reply Br. 4, 5.

We disagree. For one thing, Bryant's current arguments contradict his motion to amend. Before the state trial court, Bryant described his proposed amendment as seeking a "natural extension" of *Atkins* to cover people with FASD rather than providing additional factual support for the claim he had already been permitted to raise. JA 522. The state trial court thus had no need to consider the boundaries of *Atkins* in ruling on Bryant's motion to amend because Bryant admitted he raised a new legal theory for relief—that the Eighth Amendment should be interpreted (but currently is not) to prohibit executing people with FASD. The state trial court determined Bryant was "attempting to raise a new claim" that was barred as untimely and successive, all without reference to federal law. JA 384.

Bryant cannot avoid this problem by describing the FASD claim he sought to add as "an *Atkins* claim" or one that "meets the *Atkins* criteria." Bryant Br. 29; Oral Arg. 8:15–8:35. Federal habeas courts are not bound by a party's proposed labels, cf. *Gonzalez*, 545 U.S. at 534, and the "bit of rhetorical sleight of hand" Bryant attempts here cannot disguise the new—and distinct—claim he sought to add via the proposed amendment, *United States v. Taylor*, 62 F.4th 146, 150 (4th Cir. 2023). Bryant's original second application sought an answer to one factual question: Does Bryant have an intellectual disability as that term is defined in *Atkins* and *Hall*? If so, all agree the Eighth Amendment would forbid his execution. In contrast, Bryant's proposed amendment sought answers to

10

two new questions, one factual and one legal: (1) does Bryant have FASD; and (2) should

the Supreme Court's reasoning in *Atkins* and *Hall* be extended to cover people with FASD?

Regardless of the answers to those questions, the FASD-based claim that Bryant sought to

add is a distinct Eighth Amendment claim from the one Bryant had been granted permission

to assert and the state trial court had no need to consider federal law in denying Bryant's

request for permission to allow it. We thus hold the first requirement for procedural default

is satisfied.[*]

## B.

We also conclude that the grounds the state trial court gave for refusing to consider

the merits of Bryant's FASD claim were adequate to bar federal habeas relief.

"To qualify as an adequate procedural ground, a state rule must be firmly established

and regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quotation marks

removed). "As a general matter," procedural rules "derived from state statutes and supreme

court rules" are "firmly established." *O'Dell v. Netherland*, 95 F.3d 1214, 1241 (4th Cir.

---

[*] The Fifth Circuit's decision in *Busby v. Davis*, 925 F.3d 699 (5th Cir. 2019), does not help Bryant. That case involved a state law requiring a state court to "determine whether the defendant has asserted facts, which if true, would sufficiently state an *Atkins* claim." *Id.* at 707. The Fifth Circuit thus interpreted the state court's denial of relief as "a determination that Busby did not make a threshold showing of evidence" to support a finding he was intellectually disabled—a merits determination. *Id.* at 710. Moreover, the petitioner in *Busby* brought an intellectual disability claim rather than a legal claim seeking relief from execution for a new category of individuals under the Eighth Amendment. See *id.* For that reason, we disagree with the district court's decision to "construe the [post-conviction] court's ruling here as a decision on the merits." JA 1159 (relying in part on *Busby*'s reasoning). The state post-conviction court considered only whether a claim based on intellectual disability is factually and legally distinct from one based on FASD, rather than (as in *Busby*) the merits of Bryant's underlying legal argument.

11

1996) (en banc) (quotation marks removed). This Court has relied on South Carolina's statutory rules in holding claims were procedurally defaulted. See, *e.g.*, *Mahdi v. Stirling*, 20 F.4th 846, 905 (4th Cir. 2021); *Sigmon v. Stirling*, 956 F.3d 183, 198–99 (4th Cir. 2020).

Bryant presents two main arguments against adequacy here. We are not persuaded by either.

## 1.

Bryant's first argument challenges the state trial court's characterization of his motion to amend his second application as a procedurally improper attempt to raise a new claim. Instead, Bryant contends that South Carolina law lacks any "clear rule governing the amendment of a pending successive [post-conviction relief] application," Bryant Br. 25, and that, without a clear rule, he lacked notice that his proposed amendment would be subject to South Carolina's timeliness and successive statutes.

That argument fails. South Carolina's highest court has made clear that the relevant procedural bars apply whenever "[t]he gravamen of" a particular motion is an attempt "to add new grounds and new claims for post-conviction relief." *Arnold v. State*, 420 S.E.2d 834, 842 (S.C. 1992). That is exactly what the state trial court determined Bryant was seeking to do here through his proposed amendment. See JA 384 (describing Bryant as "attempting to raise a new claim").

## 2.

Bryant's second argument is that South Carolina courts have made various exceptions to the general bar on successive post-conviction relief applications and that these exceptions prevent the relevant state procedural rules from being "firmly

12

established." Bryant Br. 29 (quoting *James v. Kentucky*, 466 U.S. 341, 348 (1984)). Once again, we disagree.

South Carolina law allows successive applications for post-conviction relief when "the court finds a ground for relief asserted which for sufficient reason was not asserted" in the original application. S.C. Code § 17-27-90. South Carolina's highest court has "interpreted . . . the phrase 'sufficient reason' very narrowly." *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Most sufficient reasons involve procedural irregularities that prevented an applicant from receiving a merits adjudication on the original application. See, *e.g.*, *Robertson v. State*, 795 S.E.2d 29, 35 (S.C. 2016) (successive application permitted because original post-conviction counsel was not qualified under state law); *Barnes v. State*, 859 S.E.2d 260, 262 (S.C. 2021) (successive application permitted when clerk failed to ministerially file original application). Bryant also identifies several decisions (including the one in this case) where South Carolina courts have permitted successive claims that an applicant's intellectual disability prohibits their execution from going forward. See Bryant Br. 29–31. According to Bryant, the fact that "South Carolina courts regularly hear successive [post-conviction] applications raising a petitioner's ineligibility for execution" means that "the rules relied upon to foreclose" his proposed amendment "were neither clearly established nor regularly applied, and were therefore inadequate to support procedural default." *Id.* at 31.

That argument fails. The Supreme Court has held that "a discretionary state procedural rule can serve as an adequate ground to bar federal habeas review" "even if the appropriate exercise of discretion may permit consideration of a federal claim in some

13

cases but not others." *Beard*, 558 U.S. at 60–61. In addition, "[a] discretionary rule ought not be disregarded automatically upon a showing of seeming inconsistencies." *Walker v. Martin*, 562 U.S. 307, 320 (2011). For one thing, "[c]loser inspection may reveal that seeming inconsistencies are not necessarily arbitrary or irrational." *Id.* at 320 n.7 (brackets, ellipses, and quotation marks removed). What is more, "[d]iscretion enables a court to home in on case-specific considerations and to avoid the harsh results that sometimes attend consistent application of an unyielding rule." *Id.* at 320. The question is not whether a state procedural rule is discretionary, but whether "discretion has been exercised to impose novel and unforeseeable requirements without fair or substantial support in prior state law[.]" *Id.* (quotation marks removed).

We perceive no violation of those principles here. We may assume—for the sake of argument—that current South Carolina practice provides an exception to the otherwise-applicable procedural limits on subsequent post-conviction relief applications for offenders who assert they are intellectually disabled under *Atkins* and *Hall*. Yet even if this is so, there would be nothing arbitrary or irrational about limiting such an exception to those claiming to fall within a particular class whose execution has already been held to violate the Eighth Amendment and excluding those (like Bryant) who seek to make new law and then benefit from its application in their own case. Indeed, federal habeas law reflects just such a distinction. See *Teague v. Lane*, 489 U.S. 288, 310 (1989) (holding federal courts should generally decline to announce new constitutional rules in cases on collateral review); 28 U.S.C. § 2254(d)(1) (limiting federal habeas relief to situations when a state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an

14

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"). Here, as elsewhere, "it would seem particularly strange" to say States may not employ procedural distinctions "that are substantially similar to those to which we give full force" in federal court. *Beard*, 558 U.S. at 62.

Byant identifies no South Carolina authority excusing the normal procedural rules for successive post-conviction relief applications that urge the court to recognize new legal rights or extend an already recognized right to a new context. But that is precisely what Bryant sought to do here; he has identified no authority—much less authority from the Supreme Court—establishing Eighth Amendment limits on capital punishment for offenders with FASD. See, *e.g.*, *Ochoa v. Davis*, 50 F.4th 865, 903 (9th Cir. 2022) (recognizing lack of authority for FASD-based Eighth Amendment claim). And without any preexisting endorsement by South Carolina courts (or any other courts) for his approach, Bryant can hardly contend South Carolina's normal statutory procedures imposed "novel and unforeseeable requirements" on him. *Walker*, 562 U.S. at 320.

Bryant's position would also create the same "unnecessary dilemma for the States" that worried the Supreme Court in *Beard*. 558 U.S. at 61. As Bryant acknowledged at oral argument, he thinks South Carolina's current procedural rules are inadequate to preclude federal habeas review of *any* claim that the Eighth Amendment prohibits a particular person's execution—up to and including global attacks on the constitutionality of capital punishment. Oral Arg. 4:49–7:02. Adopting Bryant's position would thus force South Carolina courts to decide between "preserv[ing] flexibility" to make limited procedural exceptions "at the cost of undermining the finality of state court judgments" and strictly

15

applying "mandatory rules to avoid the high costs that come with plenary federal review." *Id.* at 61. *Beard* and *Walker* instruct that South Carolina need not make that choice. We thus hold the procedural grounds the state trial court identified were adequate to bar federal court consideration of the merits of Bryant's FASD claim.

*       *       *

We hold that the sole ground for Bryant's appeal of the district court's denial of his petition for a writ of habeas corpus is procedurally defaulted, thus foreclosing federal review. The district court's judgment is

*AFFIRMED.*

16